United States District Court
For the Northern District of California

1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10  OAKLAND UNIFIED SCHOOL DISTRICT,

11              Plaintiff/Cross-Complainant,          No. C 14-05569 JSW

12      v.                                            **ORDER ON CROSS-MOTIONS**
                                                      **FOR SUMMARY JUDGMENT**
13  N.S., a minor, by and through his parents
    ANGELA GENNING and WAYNE
14  SAMDHAL,

15              Defendants/Cross-
                Complainants.
16
    _____/
17

18          This matter comes before the Court upon consideration of the motion for summary

19  judgment filed by Plaintiff Oakland Unified School District ("District") and the cross-motion

20  for summary judgment filed by Defendant N.S., a minor, by and through his parents, Angela

21  Genning and Wayne Samdahl ("Student").  Having considered the parties' pleadings, the

22  administrative record, the Court DENIES the District's motion and DENIES IN PART and

23  GRANTS IN PART Student's cross-motion for summary judgment.

24                                **BACKGROUND**

25          At the time his parents brought a due process hearing before the Office of

26  Administrative Hearings ("OAH") naming the District for its failure to assess or offer or

27  provide mental health services to their son, Student was a 16-year old boy.  On November 3,

28  2014, OAH Administrative Law Judge Theresa Ravandi issued a final administrative decision

United States District Court
For the Northern District of California

1   after an extensive hearing pursuant to the Individuals with Disabilities Education Act ("IDEA").

2   20 U.S.C. § 1401.  The decision found substantially in favor of the Student in holding that the

3   District wrongfully failed to offer him mental health services as part of his individualized

4   education plan ("IEP") and that the District failed to provide the Student with a therapeutic

5   placement following his removal to a crisis wilderness program in March 2014.

6          The District appeals two parts of the decision of the OAH for failure to provide

7   standardized assessments to inform the transition post-secondary goals in Student's IEP and for

8   finding Student's claim regarding the following year's placement, for school-year 2014-2015

9   was not ripe for review while simultaneously holding the District as the prevailing party on that

10  issue.

11  **A.      Procedural Background.**

12         On July 16, 2014, pursuant to the IDEA, Student, through his parents, requested a due

13  process hearing.  Student claimed that from July 2012 through July 2014, the District denied

14  Student a free appropriate public education ("FAPE") by failing to assess him in the area of

15  mental health and/or failing to offer appropriate mental health services.  Student contended that

16  the District denied Student a FAPE for the 2013-2014 school year by failing to offer a legally

17  compliant transition plan and transition goals and/or failing to implement the plan it had

18  offered.  Lastly, the Student contended that the District failed to offer the Student a FAPE for

19  the 2014-2015 school year by failing to offer a placement that could meet his unique needs.

20  (*See* OAH Decision, at 2.)

21         The due process hearing took place before the OAH in Oakland, California from

22  September 9 through 11, and 26, 2014 and a final telephonic hearing day in Sacramento,

23  California on September 29, 2014.  The District and the Student each presented a significant

24  volume of evidence and multiple experts in support of their respective positions at the hearing.

25  On November 3, 2014, the Administrative Law Judge issued a 37-page decision.

26         On December 22, 2014, the District initiated the present action in this Court, seeking

27  review of the state administrative decision under the IDEA pursuant to 20 U.S.C. section

28  1415(i)(2)(A), claiming that the "OAH decision was substantially erroneous, wrongly decided,

United States District Court
For the Northern District of California

1   not supported by sufficient evidence or by the law," and that the "OAH was not thorough and

2   careful in the findings."  (Complaint at ¶ 52.)  On July 17, 2015, the District moved for

3   summary judgment on the basis that the OAH decision was erroneous.  On August 11, 2015,

4   Student cross-moved for summary judgment to seek reversal of the OAH decision only as it

5   pertains to the second and third issues presented concerning whether the District provided a

6   legally-compliant individual transition plan ("ITP") and whether the District should have been

7   found to have prevailed on the issue whether it offered a FAPE for the 2014-2015 school year

8   when the judge found the issue was not ripe for decision.

9   **B.    Factual Background.**

10          According to the substantial record developed in this case and the underlying

11  administrative decision, it is clear that Student's mental health functioning has been impaired by

12  his unique life history.  Student was born in Africa and was adopted around the age of eight

13  years old.  (AR 769-770, Decision at 3.)  Student lived in an orphanage after the death of both

14  parents and was separated from his younger brother.  (AR 771.)  He had no formal education

15  until he was adopted to California in the summer of 2006.  (*Id.*)  Thereafter, Student's American

16  parents immersed him in language-based learning and he attended several schools during his

17  elementary school years, and had private tutoring and attended therapy.  (Decision at 3.)

18  During the 2010-2011 school year, Student began to resist the treatment of his private therapist

19  and refused to continue counseling and eventually stopped taking psychotropic medication he

20  had been prescribed.  (*Id.*)

21          The District initially assessed Student as eligible to receive special education services in

22  November 2011 when he attended seventh grade at North Oakland Community Charter School.

23  (AR 423-41.)  For this assessment, Student submitted a letter from his private therapist

24  indicating that Student was being treated for Post-Traumatic Stress Disorder, Major Depressive

25  Disorder, and Reactive Attachment Disorder.  (AR 376.)  The therapist indicated that these

26  issues could cause him to lose focus in the classroom.  (*Id.*)  Based on this letter, the District

27  was aware of Student's mental health diagnosis which stemmed from his early childhood

28  trauma and loss.  (Decision at 3.)  At the administrative hearing and again in briefing the motion

United States District Court

For the Northern District of California

1    for summary judgment, the District dismissed the therapist's letter as a medical diagnosis from

2    an individual who was not a licensed educational psychologist and who had not observed the

3    Student at school. (*Id.*; *see also* MSJ Br. at 2-3.) However, during this initial assessment, the

4    District explored Student's social-emotional functioning and, although both his parents and

5    teachers identified clinically significant issues with anxiety, attention, adaptive and social skills,

6    and other at-risk behaviors, the District concluded that Student did not present social-emotional

7    or mental health needs. The IEP team did develop academic goals in the areas of writing, math,

8    and organization for Student and provided him academic accommodations for his eighth grade

9    school year. (Decision at 4.)

10       At the annual IEP meeting for Student on October 30, 2012, the District received

11   information from his teachers and parents that Student was struggling with completing his

12   homework and had poor engagement which had earned him an increased number of office

13   referrals. (*Id.*) Student was able to keep up with his school work and meet some organizational

14   goals. However, by November 2012, it was apparent to the District that Student was using

15   drugs and the District suspended him for five days. (*Id.*) At Parents' request, the District held

16   two additional IEP meeting in early 2013. Student progressed and the District determined that

17   he did not appear to require assessment of his mental health functioning. (*Id.* at 5.)

18       During the 2013-2014 school year, Student attended Oakland Technical High School as

19   a ninth grader and was found eligible for special education under the IDEA. By the end of the

20   first six-week grading period, it was clear that Student was struggling academically in all of his

21   classes, he was not finishing his homework, and was exhibiting difficulties with attendance,

22   motivation, and chemical dependency. (*Id.*) Several teachers expressed concern about

23   Student's withdrawn and depressed behavior in class and his tardies and unexcused absences

24   increased substantially. (*Id.* at 6.)

25       On October 29, 2013, the Student's IEP team met for his annual meeting and because

26   there had been a material change in Student's behavior, attendance, schoolwork and overall

27   functioning, the team determined that he needed study skills goals, attendance goals, a writing

28

4

1   goal, and a self-help goal for Student to request assistance when he did not understand class

2   assignments.  (*Id*. at 9.)

3          On January 21, 2014, the District convened another meeting of the IEP team, the team

4   discussed the introduction of mental health services.  The team agreed that Student's substance

5   use was affecting his ability to access the educational curriculum.  (AR 336.)  The District

6   established a behavior plan that provided for preferential seating, cues, and organizational

7   supports, and called for Student to attend class, develop self-advocacy skills, and to stop using

8   marijuana.  However, again, no mental health services were provided.  Parents did not consent

9   to the January 2014 IEP offer as they believed the District did not understand the true extent of

10  Student's needs and did not incorporate their recommended mental health services.  Student's

11  attendance and engagement at school continued to decline.  (Decision at 13.)

12         On March 3, 2014, Student was found by neighbors passed out on his front lawn,

13  bloodied and with a .29 percent blood alcohol level.  (*Id.* at 14.)  He was severely intoxicated,

14  delusional and screaming that he did not want to live because his friend had recently committed

15  suicide.  (*Id.*)  Due to his suicidal statements, severe intoxication, and aggressive behavior,

16  Student was placed on 72-hour involuntary psychiatric Welfare and Institutions section 5150

17  hold and transferred to the adolescent psychiatric unit at Alta Bates Medical Center.  (*Id.*)

18  During his five-day hospitalization, the treating psychiatrist diagnosed Student as suffering

19  from depression, attention deficit hyperactivity disorder, post-traumatic stress disorder, and

20  reactive detachment disorder.  (*Id.*)  Student was discharged from the hospital and went directly

21  to Open Sky on March 11, 2014.

22         The District was made aware of Student's circumstances leading to his absence from

23  school in a letter from his parents dated April 4, 2014 which discussed Student's suicidality,

24  alcohol poisoning, 5150 hold, hospital stay, and transfer to Open Sky.  (*Id.* at 15.)  The

25  Student's IEP team met again on April 22, 2014 and the District was informed about the details

26  of Student's hospital stay and subsequent transfer to Open Sky.  (*Id.*)  At this meeting, the

27  District changed Student's primary eligibility to that of emotional disturbance and added a

28  secondary disability category of health impaired.  (*Id.*)  The IEP team determined that Student's

United States District Court
For the Northern District of California

5

United States District Court

For the Northern District of California

1   diagnosis of depression, reactive attachment disorder, and attention deficit hyperactivity

2   disorder impacted his ability to engage in the academic tasks within the school setting.  (*Id.* at

3   16.)  On May 14, 2014, Parents sent the District written notification that they rejected the

4   continued placement at school and instead planned to enroll Student at Ashcreek at public

5   expense beginning May 30, 2014.  (*Id.*)  The District provided Parents with written notice of its

6   offered FAPE and rejected the request to fund the placement.  Parents transferred Student from

7   his discharge at Open Sky directly to Ashcreek.  (*Id.*)

8          The administrative law judge heard from many witnesses from both parties.  Student

9   proffered expert witnesses, including independent evaluators and therapists, who testified

10  persuasively that "Student's use of marijuana and other controlled substances was a symptom of

11  his underlying psychological distress and an attempt to self-medicate his depression or

12  otherwise modulate his mood.  Student's mental health issues fueled his substance abuse and

13  needed to be addressed in order to break his addiction."  (*Id.* at 8.)  The judge found the

14  District's expert unpersuasive when he testified that Student's drug use "must be treated first,

15  outside the special education arena, before the district could assess and address mental health

16  needs."  (*Id.*)  The judge determined this opinion reflected "an outdated, compartmentalized

17  approach to treatment."  (*Id.*)

18         The Court shall address additional specific facts in the remainder of this order.

19                                              **ANALYSIS**

20  **A.     The Individuals With Disabilities Education Act.**

21         Originally enacted by Congress in 1975 as the Education of the Handicapped Act, one of

22  the purposes of the Individuals with Disabilities Education Act ("IDEA") is "to ensure that all

23  children with disabilities have available to them a free and appropriate public education that

24  emphasizes special education and related services designed to meet their unique needs and

25  prepare them for further education, employment, and independent living."  20 U.S.C.

26  § 1400(d)(1)(A).  Under the IDEA, school districts are required to provide eligible disabled

27  student with a free appropriate public education, including special education and related

28  services.  A child's unique needs are to be broadly constructed to include academic, social,

emotional, health, communicative, physical, and vocational needs. *See Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1500 (9th Cir. 1996) (citing H.R. Rep. Mp. 410, 1983 U.S.C.C.A.N. 2088, 2106). A FAPE is intended to provide a "basic floor of opportunity" in public education that "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201 (1982).

To achieve this purpose, the IDEA "provides federal money to assist state and local agencies in educating handicapped children . . . ." *Id.* at 179. In order to qualify for such funding, a state must "provide every qualified child with a FAPE that meets [substantive] federal statutory requirements." *Amanda J. v. Clark Co. Sch. Dist.*, 267 F.3d 877, 882 (9th Cir. 2001); *see also* 20 U.S.C. § 1412. In addition to the substantive requirements, "the IDEA also includes procedural safeguards which, if violated, may prevent a child from receiving a FAPE." *Amanda J.*, 267 F.3d at 882.

Substantively, states must create an individualized education program ("IEP") tailored to the unique needs of the disabled child. *Id.* § 1412(a)(4). An IEP is a written document prepared annually that outlines the educational plan for the student. *Rowley*, 458 U.S. at 182; 20 U.S.C. § 1414(d). The IEP should be crafted in such a way that the child's individual needs, supported by services, allow the child to benefit from the education. *Rowley*, 458 U.S. at 189. States must also ensure that the child has access to education in the least restrictive environment, which means that a disabled child should be educated with non-disabled children, *i.e.* "mainstreamed," to the maximum extent appropriate. 20 U.S.C. § 1412(a)(5)(A). A special education student, however, may be removed from the regular education environment when the nature or severity of the student's disabilities is such that education in regular classes with the use of supplementary aids and services "cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A); *see also Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1044-45 (9th Cir. 1989). California law provides that the services of a nonpublic school shall be made available only in the absence of an appropriate public education program. Cal. Ed. Code § 56365(a).

United States District Court

For the Northern District of California

1    Procedurally, parents have a right to participate in the development of their child's IEP.

2    20 U.S.C. § 1415(b)(1); *Amanda J.*, 267 F.3d at 882.  Parents also have the right pursue a

3    complaint regarding the evaluation or educational placement of the disabled child.  20 U.S.C. §

4    1415(b)(6).  The state educational agency conducts an "impartial due process hearing" to

5    address complaints.  *Id.* § 1415(f).  If unsatisfied with the findings or decision at the hearing,

6    either party can bring a civil action in a district court regardless of the amount in controversy.

7    *Id* § 1415(i)(2)(A).

8    "[A] court's inquiry in suits brought under § [1415(i)(2)] is twofold.  First , the court

9    must determined whether the State has complied with the procedures set forth in the Act.

10   Second, the court must assess whether the individualized education program developed through

11   the Act's procedures was reasonably calculated to enable the child to receive educational

12   benefits.  *Rowley*, 458 U.S. at 206-07.  The IEP is not to be evaluated in light of information

13   only accessible with hindsight.  Rather, the reasonableness of the offered IEP is adjudged in

14   light of the information available to the school district at the time the IEP was developed –

15   known as the "snapshot rule."  *See J.G. v. Douglas County Sch. Dist.*, 552 F.3d 786, 801 (9th

16   Cir. 2008); *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999).  "Actions of []

17   school systems cannot be judged *exclusively* in hindsight."  *E.M. v. Pajaro Valley Unified Sch.*

18   *Dist.*, 652 F.3d 999, 1006 (9th Cir. 2011).  " But that exclusive use of hindsight is forbidden

19   does not preclude consideration of subsequent events.  The clear implication of permitting some

20   hindsight is that additional data . . . may provide significant insight into the child's condition,

21   and the reasonableness of the school district's action, at the earlier date."  *Id.*

22   **B.**    **Standard of Review and Burden of Proof.**[1]

23   As the party seeking relief in this Court, Plaintiff bears the burden of demonstrating that

24   the Hearing Officer's decision on the merits of whether a FAPE was offered should be reversed.

25   *Clyde K. v. Pullayup Sch. Dist., No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994), *superseded by*

26

27   [1]    The Ninth Circuit has explained that when an aggrieved party files a civil
28   action under the IDEA, the use of cross-motions for summary judgment to resolve such a
     case is, in effect, a procedural convenience.  Substantively, however, "the procedure is . . . an
     appeal from an administrative determination."  Accordingly, the Court analyzes the parties'
     arguments under the appropriate standards of review for IDEA cases.

United States District Court

For the Northern District of California

*statute on other grounds.*  If an aggrieved party files a civil action after a state hearing officer's decision, a reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of the party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).[2]

The preponderance of the evidence standard "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206.  Rather, a reviewing court accords "due weight" to the administrative proceedings. *Id.*  Due weight means that "the courts are to consider the findings 'carefully and endeavor to respond to the hearing officer's resolution of each material issue,' but the court 'is free to accept or reject the findings in part or in whole.'" *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)).  The amount of deference the Court affords the administrative process is a matter within its sole discretion. *See Capistrano*, 59 F.3d at 891 ("[t]he amount of deference accorded to a hearing officer's findings increases where they are 'thorough and careful'").

When determining what weight to give the hearing officer's findings, the Ninth Circuit has explained that it often is useful to examine the thoroughness and care of the findings. *Wartenberg*, 59 F.3d at 891.  Substantial weight is given to the hearing officer's decision "when it 'evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented.'" *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996) (citation omitted).  In this case, the transcript of the due process hearing and the Hearing Officer's decision demonstrates that she carefully and impartially considered all the evidence, and demonstrated her sensitivity to the

---

[2]   Neither party has asked the Court to receive additional evidence.

**United States District Court**
For the Northern District of California

1   issues presented by the parties.  Accordingly, the Court shall accord substantial weight to the

2   Hearing Officer's findings.[3]

3   **C.      District's Motion for Summary Judgment is Denied.**

4           The District contends that the OAH decision was made in error because it faulted the

5   District for failing to provide mental health services or a comprehensive assessment whether

6   mental health services should be provided.  First, the District contends that the administrative

7   decision was based primarily on the basis of hindsight, using the suicidal behavior of Student in

8   March 2014 as the basis for the conclusion that he required mental health services prior to

9   reaching that point.  However, the Court finds that the administrative law judge correctly

10  evaluated the voluminous evidence of assessments by therapists, teachers, and parents to

11  support the decision that Student needed further educationally-related mental health services

12  and assessment, even when viewed in the absence of the suicidal event in March leading to

13  Student's departure from the District.  *See, e.g., Douglas County Sch. Distr.*, 552 F.3d at 801;

14  *Pajaro Valley Unified*, 652 F.3d at 1006.  The Court agrees with the administrative law judge

15  that the threshold trigger for mental health assessment is relatively low and was triggered by

16  Student's significant decline in his educational setting.  The Court does not find persuasive the

17  District's contention that all of Student's behaviors – drug use, association with negative peer

18  group, material increase in absences and tardies, disengagement from class, unusually awkward

19  behavior, lack of motivation or effort while at school, and flat affect – are attributable merely to

20  entry into high school and to peer pressure.  The District's contention that the administrative

21  law judge should have disregarded the advice of Student's therapists, especially Dr. Peterson, is

22  similarly unpersuasive.

23          Second, the District contends that the administrative decision is in error and should be

24  reversed because the judge rejected the District's argument that treatment for chemical

25  dependency must precede assessment for or provision of mental health services.  There is no

26  dispute that the District has no legal obligation to provide substance abuse treatment to Student,

27

28          [3]      To the extent the Hearing Officer made credibility findings, she was in a
    better position than this Court is to assess the demeanor and testimony of the witnesses, and
    the Court shall not disturb those findings.

**United States District Court**
For the Northern District of California

1    which is considered a medical service and not part of the special education program

2    requirements.  The District contends that it is unpersuaded by Student's theory that his drug use

3    was predicated upon his mental health issues and was an effort at self-medication.  The District

4    also continues to argue that in order to assess Student for his special education interventions, he

5    would have to be clean of all drug use.  (AR 974-75.)  However, the judge heard from multiple

6    experts from both parties, and the parties were able fully to address and litigate their respective

7    contentions about Student's drug use.  The administrative judge was persuaded that the

8    "student's substance abuse disorder is a function of his co-occurring mental health conditions

9    and both must be treated for Student to be able to function in the school setting."  (Decision at

10   8.)  The Court agrees with this conclusion and finds that the District was not relieved of its

11   obligation to provide an accurate assessment of Student's special education challenges based on

12   the information it had at the time Student was enrolled.  Having failed to provide a FAPE as

13   required by law, the District's motion for summary judgment to reverse the decision of the

14   OAH is DENIED.

15   **D.      Student's Motion for Summary Judgment is Denied in Part and Granted in Part.**

16          Student moves for summary judgment seeking reversal of the OAH decision only as it

17   pertains to the second and third issues presented concerning whether the District provided a

18   legally-compliant individual transition plan ("ITP") and whether the District should have been

19   found to have prevailed on the issue whether it offered a FAPE for the 2014-2015 school year

20   when the judge found the issue was not ripe for decision.

21          **1.      Individual Transition Plan.**

22          Student contends the administrative decision failed to account for the participation of the

23   parents with regard to the ITP services.  Student argues that without a proper formal assessment

24   of his needs with regard to a transitional plan and without specific recommendations based upon

25   that assessment, his parents could not have participated in the execution of the plan, thus

26   resulting in a procedural violation by denying Student a FAPE.  *See* 20 U.S.C. §

27   1414(d)(1)(A)(i)(VIII)(bb).  Instead of a formal standardized assessment, Student was merely

28   informally interviewed by Resource Specialist Brooke Roche.  Based on this lack of formal

1 assessment, Student contends the ITP services were legally inadequate and form the basis for a

2 finding of the automatic denial of a FAPE based upon the procedural violation of the IDEA

3 regulations.

4 　　　　The Court finds, however, that while the IDEA requires transition plans based upon age-

5 appropriate assessments, those assessments need not be formalized or based upon standardized

6 measures.  (*See* Decision at 29.)  The cases cited by Student do not evidence any specific

7 regulatory requirement for the development of the ITC plan, but merely determined whether

8 particular standardized assessments were age-appropriate or the conversations with the student

9 too brief to be adequate.  *See, e.g., Student v. Los Angeles Unified Sch. Dist.*, 112 LRP 27364,

10 OAH Case No. 2011110413 (2011) (holding that assessments given were not age-appropriate);

11 *Student v. Palo Alto Unified Sch. Dist.*, 111 LRP 58914, OAH Case No. 2010070435 (2010)

12 (holding that a single, generalized transitional goal based upon brief interview with student was

13 insufficient to constitute age-appropriate assessment).  Here, the administrative judge found that

14 Ms. Rocke "developed Student's transition plan based upon her knowledge of Student, her

15 experience as a resource teacher, and interviews and conversations with him.  Ms. Rocke's

16 efforts to obtain information constitute an appropriate assessment in this case."  (Decision at

17 29.)  This Court agrees and DENIES Student's motion as to the alleged ITC procedural

18 violation.

19 　　　　**2.　　Prevailing Party for Unripe Issue.**

20 　　　　The administrative at once found the issue of whether the District provided an adequate

21 FAPE for the 2014-2015 school year not to be ripe, but also indicated that the District prevailed

22 on this issue.  The Court finds this determination to be contradictory and finds that the full

23 FAPE for the 2014-2015 was indeed not ripe for review.  California Education Code section

24 56507 requires that the administrative decision "shall indicate the extent to which each party

25 has prevailed on each issue heard and decided."  Cal. Educ. Code § 56507(d).  In this instance,

26 however, the judge explicitly determined that the matter of the upcoming year was "not ripe for

27 adjudication."  (Decision at 32.)  Accordingly, as the issue was not "heard and decided," the

28 designation of the District as prevailing party was in error.  Accordingly, the Court GRANTS

**United States District Court**
For the Northern District of California

Student's motion for summary judgment as to the prevailing party on the adequacy of the

District's providing a FAPE for the 2014-2015 school year.

### CONCLUSION

Accordingly, the District's motion for summary judgment is DENIED, and the Student's

cross-motion for summary judgment is DENIED IN PART and GRANTED IN PART.

**IT IS SO ORDERED.**

Dated: November 10, 2015                 _____

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

13